UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NOLAN M. THOMAS,

Plaintiff,

v.

UACJ AUTOMOTIVE WHITEHALL INDUSTRIES, INC.,

Defendant.

Case No. 1:25-cv-944

Hon. Hala Y. Jarbou

______________________________________/

**OPINION**

Plaintiff Nolan Thomas brings this action against Defendant UACJ Automotive Whitehall Industries, Inc. ("UACJ"), under the Employee Retirement Income Security Act (ERISA) of 1974, 29 U.S.C. § 1001 *et seq*. Plaintiff, a widower, seeks to recover death benefits allegedly owed to him under his late husband Andre Thomas's supplemental life insurance plan. When Andre was employed by UACJ, he elected to take $300,000 in life insurance coverage, the maximum amount, even though he was not permitted to do so under the terms of the plan. Plaintiff contends UACJ misled Andre to believe he elected the maximum coverage when it failed to notify him that he did not qualify under the plan and withheld from his paycheck insurance premiums consistent with the maximum election. Following Andre's death, the United of Omaha Life Insurance Company—the designated claims administrator under the plan—determined UACJ had only signed Andre up for $50,000 in coverage. Following several unsuccessful attempts to contact UACJ, Plaintiff sued to hold UACJ to its alleged misrepresentations and recover the remaining $250,000.

Before the Court is Plaintiff's amended complaint. In his original complaint, Plaintiff sued under § 502(a)(3) of ERISA on a breach of fiduciary duty theory. (*See* Compl. ¶ 7, ECF No. 1.)

Defendant did not answer, and Plaintiff moved for a default judgment. (*See* ECF No. 13.) This Court denied Plaintiff's motion because no equitable remedy authorized monetary relief from UACJ's general assets. (*See* Op. & Order Denying Mot. for Default J. 8–11, ECF No. 18.)

In his amended complaint, Plaintiff replaces his § 502(a)(3) claim with two new causes of action. He first brings a claim under § 502(a)(1)(B) "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). He also brings a claim for civil penalties under § 502(c) for UACJ's alleged failure to respond to a plan beneficiary's request for plan documents. *Id.* § 1132(c)(1)(B). UACJ has again failed to appear, and Plaintiff moves again for default judgment. (ECF No. 26.) The Court holds that Plaintiff is not entitled to relief under § 502(a)(1)(B) because the plan unambiguously prohibits an employee earning Andre's salary from electing $300,000 in life insurance coverage, and precedent bars modification of an unambiguous plan absent extraordinary circumstances that are not present here. The Court further holds that Plaintiff is not entitled to civil penalties because he has not shown that UACJ's failure to respond to his document requests caused him prejudice.

## I. BACKGROUND

UACJ provides two kinds of life insurance to its employees: a basic plan where the premiums are covered by the company, and a voluntary plan where employees are responsible for covering the premiums. (Compl. ¶ 9–11.) UACJ is the plan administrator on both plans (*id.* ¶ 13), and United of Omaha is the claims administrator and insurer (*id.* ¶ 14). Employees who enroll in the voluntary plan may select coverage ranging from $5,000 to $300,000, in increments of $5,000. (Grp. Voluntary Term Life Benefit 2, ECF No. 27-2.) Under the voluntary plan, employees cannot elect coverage greater than "5 times [their] Annual Earnings, rounded to the next higher multiple of $5,000." (*Id.*) Additionally, to obtain coverage over $100,000, an employee must submit an evidence of insurability form establishing that they are in good health. (*Id.* at 2, 27.)

Plaintiff affirms that Andre signed up for $300,000 in coverage (Nolan Aff. ¶ 5, ECF No. 1-4; Am. Compl. ¶ 8, ECF No. 19), even though the maximum coverage for which he was eligible was $240,000—five times Andre's yearly salary of $47,340.80 ($236,704) rounded up to the nearest multiple of $5,000 (Compl. ¶ 19). Beginning on January 6, 2023, and continuing for ten weeks, UACJ withheld $15.90 in life insurance premiums from Andre's weekly paycheck. (Earnings Statements, ECF No. 27-5; *see* Am. Compl. ¶ 9.) This withholding amount is consistent with $300,000 in voluntary life insurance coverage. (*See* Summary Plan Description, ECF No. 27-3, PageID.271.) UACJ, however, never explicitly confirmed that Andre had signed up for $300,000 in coverage, nor did it communicate to him that he had failed to obtain, or was ineligible for, the maximum coverage. (Am. Compl. ¶ 10.)

Andre passed away on March 6, 2023. (*Id.* ¶ 12.) Following Andre's death, Plaintiff completed the beneficiary's portion of the "Proof of Death Claim Form" and sent it to Stephanie Frees, UACJ's human resources director, for her signature. (Compl. ¶ 28.) This form is required to begin the claims process. (*Id.*) While initially receptive to Plaintiff's outreach, Frees and UACJ soon stopped responding altogether. (Am. Compl. ¶¶ 14, 17.) Plaintiff made several attempts to contact UACJ to no avail (*id.* ¶ 15), and United of Omaha eventually closed the claim because Plaintiff was unable to obtain a signed copy of the Proof of Death Claim Form from UACJ (Compl. ¶ 38). Sometime in 2024, Plaintiff obtained a printout of Andre's voluntary benefit form from UACJ, which revealed that it had only signed him up for $50,000 in voluntary life insurance benefits. (*Id.* ¶ 42; *see* Voluntary Employee Life Plan, ECF No. 27-6.) On February 6 and November 8, 2024, Plaintiff's counsel sent subpoenas to UACJ requesting documents relating to Andre's insurance coverage. (Am. Compl. ¶ 30.) Plaintiff asserts that UACJ has never responded to these requests for information. (*Id.* ¶ 31.)

With the assistance of his current counsel, Plaintiff was able to get in contact with Frees. On June 2, 2025, she sent a completed Proof of Death Claim Form, which allowed United of Omaha to reopen the claim and begin processing Plaintiff's benefits under the basic and voluntary plans. (Compl. ¶¶ 45–46.) The next day, Plaintiff's counsel emailed Frees requesting a copy of Andre's insurance enrollment form, but she never responded. (Am. Compl. ¶¶ 30–31.) Later that month, United of Omaha approved Plaintiff's life insurance claims, but it only paid out a $50,000 death benefit to Plaintiff under the voluntary plan. (Compl. ¶ 52.) Plaintiff also received $48,000 under the UACJ basic life insurance plan. (*Id.*)

Following United of Omaha's determination that he was owed only $50,000 under the voluntary plan, Plaintiff sued UACJ under § 502(a)(3) for breach of fiduciary duty. (*Id.* ¶¶ 68–70.) UACJ defaulted, and Plaintiff moved for default judgment. This Court denied relief because no equitable remedy allowed for the vindication of Andre's expectation interest against UACJ. (*See* Op. & Order 2.) It also held that UACJ could not be made to disgorge the premium overpayments because those payments had been passed on to United of Omaha. (*Id.* at 11.) The Court then gave Plaintiff twenty-one days from the entry of its order to join United of Omaha as a party. (*Id.*)

Plaintiff filed his amended complaint on February 5, 2026. In his amended pleadings, Plaintiff leaves behind his § 502(a)(3) claim and replaces it with two new ones. (*See* Am. Compl. ¶¶ 26, 32.) He now brings a § 502(a)(1)(B) claim for $250,000 in life insurance benefits allegedly owed to him under the terms of the voluntary plan. He also brings a second claim for civil penalties under § 502(a)(c) arising from UACJ's alleged failure to respond to Plaintiff's document requests. (Am. Compl. ¶ 1.) Plaintiff declined to add United of Omaha as a defendant in his amended complaint.

## II. LEGAL STANDARD

Under Rule 55, following proof of service and an entry of default, a district court may enter a default judgment against a party who has failed to make an appearance. Fed. R. Civ. P. 55(a). Rule 55 sets out two mechanisms for obtaining a default judgment: by the clerk or by the court. The former, which is mandatory under a narrow set of circumstances, applies when "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation" and he has presented "an affidavit showing the amount due." Fed. R. Civ. P. 55(b)(1).

In all other circumstances, such as here, the party seeking a default judgment must apply to the court. On entry of default, the moving party's well-pleaded factual allegations, except those related to damages, are taken as true. *See Antoine v. Atlas Turner*, 66 F.3d 105, 111 (6th Cir. 1995). The moving party, however, "is not entitled to [default] judgment as of right." *Nessel v. Bolo Cellars, LLC*, No. 1:23-cv-11705, 2024 WL 1638615 (E.D. Mich. Apr. 16, 2024) (quoting 10A Wright & Miller's Federal Practice & Procedure § 2685 (4th ed. 2024) (West)). Because defaulting parties do not concede the law, "[a] district court 'must exercise sound judicial discretion' in deciding if default judgment is proper." *Id.* In exercising that discretion, a district court considers the following factors:

> (1) possible prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) possible disputed material facts; (6) whether the default was due to excusable neglect; and (7) the preference for decisions on the merits.

*Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002).

## III. ANALYSIS

This Court has previously evaluated the *Russell* factors and determined they universally weigh in favor of Plaintiff. (*See* Op. & Order 4–7.) But its conclusions on the second and third factors were predicated on evaluating the merits of a breach of fiduciary duty claim under

§ 502(a)(3) and the sufficiency of Plaintiff's initial complaint, respectively. Here, the Court confronts Plaintiff's amended complaint with two new claims. The Court therefore considers anew the second and third *Russell* factors as to these new causes action. For the following reasons, the Court holds that Plaintiff is not entitled to recovery on either of his claims.

**A. Benefits Under the Plan**

**1. Merits**

Plan beneficiaries are statutorily entitled to the benefits of an ERISA plan. Section 502(a)(1)(B) authorizes a beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan," or "to enforce his rights" under the same. 29 U.S.C. § 1132(a)(1)(B). An ERISA plan can mean an employee welfare benefit plan, an employee pension benefit plan, or both. *Id.* § 1002(3). Here, the voluntary plan is an employee welfare benefit plan because it is an insurance program "established . . . by an employer . . . for the purposes of providing [life insurance] for its participants or their beneficiaries." *Id.* § 1002(1)(A). Section 402 of ERISA governs how plans are established. Plans "shall be established and maintained pursuant to a written instrument." *Id.* § 1102(a)(1). That written instrument must "specify the basis on which payments are made to and from the plan." *Id.* § 1102(a)(4). Since the statute contemplates plans as self-contained written instruments, it is the text of the plan that governs. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 435–38 (2011). Other instruments, such as summary plan descriptions, or representations by plan fiduciaries, are presumptively excluded to the extent they contradict or modify the plan's text.

Courts have consistently read § 502(a)(1)(B) to accord with ERISA's emphasis on text. *See Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 839 (6th Cir. 2007); *Pearson v. Voith Paper Rolls, Inc.*, 656 F.3d 504, 509 (7th Cir. 2011); *Julia v. Bridgestone/Firestone, Inc.*, 101 F. App'x 27, 30–31 (6th Cir. 2004) (listing cases). An action

brought under § 502(a)(1)(B) "sounds in contract," which consequently leaves little room for equity to enlarge or modify the plan's text. *Feifer v. Prudential Ins. Co. of America*, 306 F.3d 1202, 1213 (2d Cir. 2002). In other words, § 502(a)(1)(B) "does not allow a 'change, akin to the reform of a contract,' because doing so 'seems less like the simple enforcement of a contract as written and more like an equitable remedy.'" *Hayes v. Prudential Ins. Co. of America*, 60 F.4th 848, 852 (6th Cir. 2023) (quoting *Amara*, 563 U.S. at 436). When the text of a plan is unambiguous, the Court is bound to apply its terms.

Here, the terms of the voluntary life insurance plan unambiguously preclude Andre's eligibility for the maximum life insurance election. The plan schedule states that an employee "may elect to be insured" up to $300,000 but provides that "[i]n no event shall [the employee's] amount of life insurance exceed 5 times" the employee's annual salary, "rounded to the next higher multiple of $5,000." (Grp. Voluntary Term Life Benefit 2.) The summary plan description confirms these parameters. In a table on the first page labeled "Coverage Guidelines" in bold letters, the "Maximum" coverage available was "$300,000, . . . but no more than 5 times annual salary." (Summary Plan Description, PageID.269.) Andre's annual salary was $47,340.80 per year, so the maximum amount of life insurance he could have elected under the plan was $240,000. (*See* Compl. ¶ 19.) The plan documents are clear: an individual making Andre's salary was ineligible for $300,000 in voluntary life insurance coverage at the time of his election.

Plaintiff nevertheless seeks to have this Court read a plan out of Andre's reliance on UACJ's misrepresentations. Plaintiff argues that Andre detrimentally relied on both UACJ's failure to "provide Andre with notice that he was not eligible for $300,000" in life insurance coverage (Am. Compl. ¶ 10), and the fact that UACJ withheld from Andre's paycheck insurance premiums consistent with the maximum election (*id.* ¶ 8). But Andre had notice from the plan

documents that he was ineligible to elect the maximum coverage because he did not qualify under its defined salary-to-benefit ratios. Those same plan documents established that Andre could not elect over $100,000 in coverage without filling out a proof of insurability form, which Andre did not file. Modifying those terms to allow relief here would be inconsistent with ERISA's plain meaning and the scope of relief available under § 502(a)(1)(B). *See Varity Corp. v. Howe*, 516 U.S. 489, 492, 494–95 (1996).

Furthermore, it is unclear whether Plaintiff's equitable estoppel claim can be brought under § 502(a)(1)(B). The Sixth Circuit has not clarified whether equitable estoppel is a doctrine that is appropriately nested within § 502(a)(1)(B)—"to estop the plan from being enforced as written"—or within ERISA's equitable "catchall" cause of action, § 502(a)(3). *Julia*, 101 F. App'x at 31. The rule is not consistent across circuits. The Eleventh Circuit, for instance, views equitable estoppel under ERISA as a "common law doctrine" that is allowed under § 502(a)(1)(B). *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1090 (11th Cir. 1999). The Second Circuit, in contrast, has strictly limited reliance theories to cases brought under § 502(a)(3). *See Feifer*, 306 F.3d at 1213–14. For its part, the Sixth Circuit reached the merits of an estoppel claim without reference to its statutory basis, *see Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403–04 (6th Cir. 1998) (en banc), but in a more recent case a Sixth Circuit panel indicated without analysis that equitable estoppel claims are properly brought under § 502(a)(3). *See Pearce v. Chrysler Group LLC Pension Plan*, 893 F.3d 339, 349 (6th Cir. 2018).

Whether or not to wade "deeply into this morass" is a question for the Court of Appeals. *Julia*, 101 F. App'x at 31. Even if Plaintiff has selected the appropriate vehicle for his reliance claim, he has not made out a claim for equitable estoppel under ERISA because he has not alleged that UACJ intended to mislead Andre into electing, or remaining enrolled in, a plan for which he

was not eligible. *See Sprague*, 133 F.3d at 403 (requiring that the "party to be estopped must intend that representation be acted on," among other factors). The unfortunate reality is that the voluntary plan unambiguously forecloses Andre's eligibility for the maximum life insurance coverage. Plaintiff understandably focuses on UACJ's omissions and misrepresentations, but they do not create a "plan" for purposes of relief under § 502(a)(1)(B). Therefore, no recovery is available to him.

**2. Due Process**

As an alternative basis for recovery under § 502(a)(1)(B), Plaintiff argues that UACJ's failure to properly administer the voluntary plan denied him due process under *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). To the extent Plaintiff seeks a substantive remedy based solely on an allegation that UACJ violated ERISA's procedural requirements, his argument is meritless. *See Lewandowski v. Occidental Chem. Corp.*, 986 F.2d 1006, 1008 (6th Cir. 1993); *Van Loo*, 64 F. Supp. 3d at 1030 n.7. Moreover, the portion of *Wilkins* that Plaintiff invokes says nothing about what constitutes a denial of due process under ERISA's procedural guarantees.

In any event, if there is a dearth of process in this case the fault rests with Plaintiff. Here, the voluntary plan sets out a clear process for appealing the denial of claims. (Claim Rev. & Appeal Procs. 22–24, ECF No. 27-2.) Plaintiff has chosen not to follow these procedures. After receiving notice that United of Omaha only approved a $50,000 award from the voluntary plan, Plaintiff ignored the claims appeal process and instead chose to file this action.[1] (*See* Compl. ¶ 52.)

---

[1] Ordinarily, this failure alone would be fatal to Plaintiff's case, as the Sixth Circuit has held "ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metro Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). This Court, however, has previously held that exhaustion "is an affirmative defense that the defendant must plead." *Beamon v. Assurant Emp. Benefits*, 917 F. Supp. 2d 662, 666 (W.D. Mich. 2013). Accordingly, the Court will not raise the matter on a motion for default judgment where defendant has failed to make an appearance.

No policy or action from UACJ compelled this result. If Plaintiff believes that an appeal would have been futile because of UACJ's unresponsiveness, he has offered no explanation of the sort to this Court. Having not followed the voluntary plan's established procedures, Plaintiff is in no position to argue today that they were inadequate.

**B. Civil Penalties**

Plaintiff also seeks civil penalties against UACJ for its failure to respond to requests for plan information. Beneficiaries under an ERISA-covered insurance plan are entitled to receive plan documents upon request. *Gatlin v. Nat'l Healthcare Corp.*, 16 F. App'x 283, 289 (6th Cir. 2001). Under § 502(c), plan administrators who fail to respond to such requests by any "participant or beneficiary" within thirty days of the request may "in the court's discretion be personally liable to such participant or beneficiary" up to $110 per day starting from the date of failure or refusal. 29 U.S.C. § 1132(c)(1)(B); 29 C.F.R. § 2575.502c-1 (increasing the penalty from $100 to $110 a day). Section 104(b)(4) of the Act requires administrators to provide the following information upon a beneficiary's request: "the latest updated summary, plan description, . . . the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).

Here, Plaintiff alleges that UACJ has failed to respond to his repeated requests for "plan documents . . . as well as other related documents" since February 6, 2024. (Am. Compl ¶ 30.) Taking Plaintiff's allegations of fact at face value, the penalty began to accrue on March 8, 2024, thirty-one days after Plaintiff first requested insurance documents. (*Id.* ¶ 35.) But it is unclear whether Plaintiff has a statutory entitlement to the documents he sought. None of Plaintiff's several document requests mirror the language of § 104(b)(4), and the Sixth Circuit has cabined the catchall provision concerning "other instruments" to apply only to "documents which provide a plan participant with information concerning how the plan is *operated*." *Allinder v. Inter-City*

*Prods. Corp.*, 152 F.3d 544, 549 (6th Cir. 1998). Plaintiff makes no effort in his brief to justify that the documents he sought fall under § 104(b)(4). The Court must therefore take this step on its own accord.

**1. Plan Documents**

Plaintiff demanded documents beyond the scope of § 104(b)(4). Claims forms and elections forms are not documents that an administrator is mandated to turn over to a beneficiary under § 104(b)(4). *See Strang v. Ford Motor Co. Gen. Retirement Plan*, No. 14-cv-14410, 2015 WL 13541159, at *2 (E.D. Mich. Oct. 23, 2015) (citing *Allinder*, 152 F.3d at 549); *accord Jordan v. Tyson Foods, Inc.*, 312 F. App'x 733–34 (6th Cir. 2008). Plaintiff nevertheless repeatedly invokes UACJ's failure to provide elections forms and claims forms as a basis for relief. In his first subpoena, sent to UACJ on February 6, 2024, Plaintiff requests information referencing "any and all claims made for coverage under the policy." (Feb. 6 Subpoena ¶ 3, ECF No. 27-10.) His second subpoena repeats the request. (*See* Nov. 8 Subpoena ¶¶ 16–18, ECF No. 27-10.) And on June 2, 2025, Plaintiff's attorneys requested a "copy of Andre's life insurance enrollment form(s)" from UACJ. (*See* Email from Haney L. Office to S. Frees, ECF No. 27-11, PageID.352.) Plaintiff characterizes these requests as requests for "official plan documents applicable to Andre's benefits." (Am. Compl. ¶ 30.) But precedent says otherwise. Plaintiff is therefore not entitled to civil penalties for UACJ's failure to deliver these documents.

Some of Plaintiff's requests, however, appear to qualify under § 104(b)(4). For example, in his November subpoena, Plaintiff asked for "any and all documents which constitute the life insurance policy/policies associated with" Andre. (Nov. 8 Subpoena ¶ 1.) This request, while perhaps broadly drawn, reasonably sweeps in the summary plan description and the plan itself because those documents set forth the terms and conditions of Andre's voluntary life insurance policy. *See* 29 U.S.C. § 1024(b)(4). And breadth or ambiguity is not necessarily a bar here.

Indeed, if UACJ had responded, it could have sought greater clarity. *See Cultrona v. Nationwide Life Ins. Co*, 748 F.3d 698, 707 (6th Cir. 2014) ("[A] plan administrator is free to place the burden of clarity squarely on the requester simply by replying to an ambiguous demand for . . . documents with the administrator's own request for greater specificity."). UACJ chose not to respond (*see* Am. Compl. ¶ 31), and the Court finds no issue with letting Plaintiff's general request stand as a colorable demand for plan documents under § 104(b)(4). It finds so in no small part because UACJ had knowledge of why Plaintiff was seeking information about its voluntary insurance plan. *See Anderson v. Flexel, Inc.*, 47 F.3d 243, 248 (7th Cir. 1995) ("[A]n administrator's knowledge of surrounding circumstances or the information being requested may require a response to an otherwise general request.").

Plaintiff's allegations, however, seem to contradict each other. In his amended complaint, he asserts that UACJ "has not provided plan documents or even a response to the requests." (Am. Compl. ¶ 31.) But in his initial complaint, Plaintiff stated that his former attorneys were able to secure documents from UACJ sometime in 2024, including a copy of Andre's voluntary life benefit summary form. (*See* Compl. ¶ 42; Voluntary Life Benefit Summary, ECF No. 27-6.) While it is plausible that Plaintiff could have obtained this document before he sent his first subpoena to UACJ on February 6th, there is no indication in the record that this is the case. It is equally plausible that UACJ did respond to some of Plaintiff's requests for documents sometime in 2024 after he sent his first subpoena.

Plaintiff also fails to explain how and when he came into possession of the voluntary plan document and the summary plan description. Both documents were attached to his original and amended complaints. (*See* Grp. Voluntary Term Life Benefit, ECF Nos. 1-2, 27-2; Summary Plan Description, ECF Nos. 1-3, 27-3.) He has not stated whether he possessed them prior to filing suit,

or obtained them from UACJ, from United of Omaha, or from a third party. Combined, these documents comprehensively lay out the terms and conditions of the voluntary plan, and they contain much of the information Plaintiff sought to obtain in his subpoenas. (*See* Feb. 6 Subpoena ¶ 1; Nov. 8 Subpoena ¶¶ 2, 5–15.) Plaintiff also offers no reason why the plan documents and the summary plan description were insufficient to determine his rights under the plan. In other words, absent the desire to seek claim and enrollment forms unprotected by § 104(b)(4), it appears Plaintiff had all the information he needed to determine Andre's eligibility under the plan, and consequently his own rights as a beneficiary.

**2. Prejudice**

Relatedly, Plaintiff has failed to allege that UACJ's unresponsiveness prejudiced him. While prejudice is not a necessary element under § 1132(c)(1)(B), "[a] showing of prejudice to the claimant is a 'logical concern' in a court's decision to impose a penalty." *Cultrona v. Nationwide Life Ins. Co.*, 936 F. Supp. 2d 832, 854 (E.D. Ohio 2013) (quoting *Gatlin*, F. App'x at 289). The prejudice inquiry is a factual one; it focuses on whether the Plaintiff is "in a worse position because of [UACJ's] delays than [he] would have been if the required documents had been timely disclosed." *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1067 (6th Cir. 1994). "The focus of inquiry into an injury . . . is upon the delay in receiving the information, not upon the denial of benefits." *Hinkel v. Navistar, Intern. Corp.*, No. 90-6561, 1992 WL 5435, at *4 (6th Cir. Jan. 15, 1992). In the absence of prejudice, this Court has discretion to award no penalties at all. *See Bartling*, 29 F.3d at 1068–69.

Here, the word "prejudice" does not appear once in Plaintiff's brief or amended complaint. On its own review of the record, the Court finds none. As discussed above, the voluntary plan and the summary plan description clearly answer whether Andre was eligible for $300,000 in life insurance coverage. Plaintiff is in possession of both documents, and there is no allegation that

UACJ withheld them from either him or Andre. Therefore, even if this Court took Plaintiff's allegation that UACJ has failed to respond at all to his written requests for plan documents at face value, he has failed to connect that omission to any cognizable theory of prejudice.

**3. Penalty**

The purpose of § 502(c) is "to punish plan administrators who fail to comply with requests for documents which ERISA requires them to provide." *Osborn v. Knights of Columbus*, 401 F. Supp. 2d 825–26 (N.D. Ohio 2005). "Even mere negligence might justify an award of statutory penalties." *Thompson v. TransAm Trucking, Inc.*, 750 F. Supp. 2d 871, 889 (S.D. Ohio 2010) (citing *McGrath v. Lockheed Martin Corp.*, 48 F. App'x 543, 557 (6th Cir. 2002)). Here, UACJ has been at least negligent in responding to Plaintiff's requests. UACJ first received notice that Plaintiff sought to recover his benefits under Andre's life insurance plan on March 27, 2023. (Am. Compl. ¶ 13.) UACJ acknowledged receipt and then stopped responding without explanation. (*Id.* ¶ 15). Plaintiff asserts that UACJ has to this day not responded to his requests for plan documents. (*Id.* ¶¶ 31, 33). Even if Plaintiff's underlying claims lacked merit, UACJ, as plan administrator, owed him a statutory duty to respond to his document requests with, at a minimum, a demand for greater specificity or a reasoned explanation for its refusal to turn over the requested documents.

On the other hand, Plaintiff has failed to allege prejudice and has repeatedly and erroneously characterized requests for documents outside the ambit of § 104(b)(4) as requests for "plan documents." (*See* Am. Compl. ¶¶ 30–31; Pl.'s Br. 6, ECF No. 27.) And even if some of Plaintiff's requests can be construed as qualifying under § 104(b)(4) (*see* Feb. 6 Subpoena ¶ 1, Nov. 8 Subpoena ¶¶ 1–2), Plaintiff has not told the Court how the documents he already has (the voluntary benefit plan and the summary benefit description) are insufficient to understand his rights as a beneficiary under the plan. *See Bartling*, 29 F.3d at 1070 (noting that "courts should favor disclosure where it would help participants understand their rights"). These omissions and

errors are ultimately fatal. Given the apparent lack of articulated purpose for the document requests combined with the absence of prejudice, the Court declines to award statutory penalties.

## IV. CONCLUSION

Plaintiff cannot recover under § 502(a)(1)(B) because the plan documents unambiguously preclude an individual earning Andre's salary from electing $300,000 in life insurance coverage. The Court also declines to award statutory penalties under § 502(c) because Plaintiff has not alleged he was prejudiced by UACJ's failure to deliver documents relating to Andre's insurance coverage.

An order consistent with this opinion will issue.

Dated: October 13, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE